2024 IL App (1st) 191101-C

No. 1-19-1101

Second Division
July 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CR 1910 |
| SHAMAR GRIFFIN, | ) ) ) | Honorable Michael B. McHale |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    On June 16, 2011, defendant-appellant Shamar Griffin pled guilty to one count of first degree murder and was sentenced to 35 years' imprisonment. On February 4, 2019, defendant filed a motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which advanced claims of ineffective assistance of counsel and actual innocence supported by affidavits from himself, Lavonte Moore, and Perrier Myles. The circuit court denied leave to file the successive postconviction petition. Defendant appealed, arguing that (1) the court incorrectly held that he was not permitted to pursue

a claim of actual innocence after entering a guilty plea and he had set forth a colorable claim of actual innocence and (2) he demonstrated both cause and prejudice for his claim of ineffective assistance of counsel.

¶ 2 In May 2022, we reversed, finding that defendant had set forth a colorable claim of actual innocence based on the affidavits of Moore and Myles, and remanded the entire petition to the trial court for further proceedings under the Act. 2022 IL App (1st) 191101-B. Our supreme court granted the State's petition for leave to appeal, and on March 21, 2024, the supreme court affirmed our judgment as to defendant's claim of actual innocence but reversed the portion of the judgment declining to review defendant's claim of ineffective assistance of counsel and remanding the entire postconviction petition. 2024 IL 128587, ¶¶ 63-73. The supreme court remanded to this court "for a determination of whether [defendant] satisfied the cause-and-prejudice test as to his ineffective assistance of counsel claim." *Id.* ¶ 73. In accordance with the supreme court's direction, we vacated in part our May 10, 2022, opinion in this case and now consider defendant's claim of ineffective assistance of counsel. As to defendant's claim of ineffective assistance of counsel, we find that defendant cannot establish the requisite prejudice.

¶ 3 Thus, we affirm the trial court's denial of defendant's motion for leave to file a successive postconviction as to his ineffective assistance of counsel claim but, in accordance with the supreme court's mandate, remand for further proceedings under the Act as to his claim of actual innocence.

¶ 4                                    I. BACKGROUND

¶ 5 Defendant was charged with 29 counts related to two shootings that occurred on June 26, 2009. For the shooting death of Milissa Williams, he was charged with 24 counts of first degree murder. For the shooting of Otis Houston, he was charged with four counts of attempted first degree murder and one count of aggravated battery with a firearm. Assistant Public Defender

(APD) Robert Strunck represented defendant throughout the proceedings. On March 23, 2011, APD Strunck reported to the court that he had negotiated with the State and had tendered the State's offer to defendant.

¶ 6     On May 10, 2011, defendant requested the circuit court to appoint new counsel, stating that APD Strunck was "ineffective" and had only visited him once during the 18 months he had been in jail. APD Strunck responded that he had spent multiple hours at the jail with defendant and had spoken to him on the phone on multiple occasions. APD Strunck had also informed defendant that it was a very difficult case and explained that defendant could review the police reports in APD Strunck's presence later that week. The court determined that there was nothing to indicate that APD Strunck could not continue to effectively represent defendant. The court further explained to defendant that it did not have the ability to assign a different public defender and that defendant's only other option was to hire private counsel.

¶ 7     On June 16, 2011, defendant accepted the State's offer to plead guilty to one count of first degree murder in exchange for a 35-year prison term. At the time defendant entered the plea, he acknowledged that he was giving up his right to trial and his right to a presentence investigation report and that no one had threatened him or promised him anything in exchange for the plea. He signed a written waiver form stating the same.

¶ 8     The State presented the factual basis for defendant's plea as follows.

¶ 9     Lavertice Harmon provided a statement that he was playing dice on North LeClaire Avenue in Chicago with Leroy Battle, Kevin Barnes, and others around 3 a.m. when defendant arrived in a dark-colored vehicle with its headlights off. Defendant, who was armed with a handgun, told Harmon that the car was stolen, that Williams had stabbed defendant in the past, and that he was "fixin' to merk that b***," which Harmon knew meant to kill Williams. Harmon asked defendant

to wait so that he could get his friends out of the area, and defendant drove around the block. In the meantime, Harmon warned Williams and Houston. As Williams and Houston began walking toward LaFollette Park, defendant returned, got out of his car, and approached Williams. Harmon did not hear what defendant and Williams said to one another, but he did observe defendant fire a single shot at Williams and multiple shots at Houston. Defendant fired once more at Williams before getting back in his car and driving away.

¶ 10    Houston would testify that, at around 3:30 a.m. on June 26, 2009, defendant shot Williams twice near 5101 West Hirsch Street in Chicago, then chased him down and shot him four times, three times in the bicep and once in the right side of his chest. Houston would also testify that he identified defendant in a physical lineup.

¶ 11    The State also submitted the grand jury testimony of Barnes and Battle, who both identified defendant as the shooter. Further, the State submitted the grand jury testimony of Carlton Winters, who testified that defendant admitted to the shooting in a phone conversation.[1]

¶ 12    Though not part of the State's factual basis, defendant's confession to the police on December 22, 2009, is relevant to the disposition of this appeal, and thus we summarize that statement, as it is found in the police report, which is in the record on appeal. Defendant stated that he was stabbed by Williams in April 2009 and, on the day of the shooting, he was only trying to send her a message, not kill her. He admitted that he fired multiple shots at both Williams and Houston, though he claimed he did not know their names prior to the shooting.

¶ 13    The circuit court accepted defendant's plea and, in accordance with the negotiations, sentenced him to 35 years' imprisonment on June 16, 2011. The court advised defendant of his

---

[1]None of the referenced grand jury testimony transcripts appear in the record on appeal.

right to appeal and informed him that he would first have to file a motion to withdraw his guilty plea within 30 days.

¶ 14    Defendant did not file a timely motion to withdraw his plea. He filed a notice of appeal on August 31, 2011, which the circuit court denied. On November 16, 2011, this court allowed defendant's late notice of appeal. On September 6, 2012, we granted the parties' agreed motion for summary remand and directed the clerk of the circuit court to modify certain monetary assessments imposed against defendant. *People v. Griffin*, No. 1-11-3210 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 15    On September 17, 2017, defendant filed an initial *pro se* postconviction petition in which he claimed actual innocence based on his own affidavit and documents obtained through a Freedom of Information Act (FOIA) request. See 5 ILCS 140/1 *et seq.* (West 2016). In particular, defendant alleged that his inculpatory statement should have been suppressed because the police officers who arrested him in Atlanta, Georgia, did not have a warrant or probable cause. He also alleged mistreatment while in police custody and that for 30 hours he "was threatened and forced to confess." Finally, he claimed that his counsel was ineffective for failing to investigate his illegal arrest. The circuit court summarily dismissed the petition. On appeal to this court, defense counsel, appointed from the Office of the State Appellate Defender, filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court granted the motion as "there [were] no issues of arguable merit to be pursued on appeal." *People v. Griffin*, No. 1-18-0490 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16    On February 4, 2019, while his initial postconviction petition was still pending before this court, defendant sought leave to file the successive postconviction petition that is the subject of this appeal.

¶ 17    The successive petition first makes a claim of ineffective assistance of counsel, alleging that his trial counsel, APD Strunck, was ineffective for failing to investigate Butler as the actual shooter, which defendant instructed him to do "after 14 months" of awaiting his trial because he "was hearing around the jail that was the person who killed [Williams]."[2] Defendant stated that APD Strunck informed him that "since [he] confessed to the murder there is no defense that can help [him]," and defendant informed trial counsel that his confession was false and was the result of duress, psychological abuse, and mental coercion.

¶ 18    The petition then sets forth a claim of actual innocence based on the newly discovered evidence contained in the affidavits of Moore and Myles, both of whom spoke with defendant in prison. In his petition, defendant alleged that he did not know about the information Moore and Myles had until he spoke with them in prison.

¶ 19    Moore averred that he witnessed the shootings while sitting in his parked car across from LaFollette Park. Moore stated that he observed Jerrell Butler emerge from an alley and walk past his car toward a group of people. As Butler passed Moore's car, he said "wassup" to Moore, and then he pulled out a gun from his waistband. Moore heard five gunshots and saw Butler run past his car again. Moore never mentioned this to anyone before encountering defendant in prison in November 2018 because he was afraid of retaliation from Butler and Butler's friends.

¶ 20    Myles, who was incarcerated at the time of the shooting, averred that he was aware that his friends, Cornell McWilliams, Barnes, and Harmon, witnessed the shooting and informed the police that defendant was the shooter. He further averred that after his release he spoke with McWilliams and was told that defendant was a scapegoat "so that [Harmon] and [Barnes's] drug business

---

[2]We note that defendant does not identify the source of this information and now claims that he learned of Butler's involvement specifically from Moore and Myles in prison after he pled guilty.

[could] continue without further pressure from Chicago police." McWilliams admitted to Myles that they did not see the shooter's face but said he was light-skinned with braids. This description confused Myles because he knew that defendant is dark-skinned with dreadlocks. According to Myles, McWilliams further stated that he, Harmon, and Barnes contacted the police to make false accounts identifying defendant as the shooter and that he later learned that Houston owed Butler money from drug sales and he believed that Butler was the actual shooter because Houston owed Butler a drug debt. Myles was incarcerated again, and on June 29, 2018, he informed defendant of the conversation with McWilliams.

¶ 21    Defendant's petition also contains a section titled "Newly Discovered Evidence of Police Misconduct" of Chicago police detectives John Folino and Tim McDermott and listed 11 lawsuits, which were attached to the petition. Defendant makes no arguments regarding the police misconduct lawsuits on appeal.

¶ 22    On April 5, 2019, the circuit court denied defendant's motion for leave to file his successive petition. Citing *People v. Simmons*, 388 Ill. App. 3d 599 (2009), the court stated that "petitioner cannot make a claim of actual innocence after a proper constitutionally compliant guilty plea." The court further noted that defendant did not include any allegations that he was coerced into the plea. The court made no reference to defendant's claim of ineffective assistance of counsel.

¶ 23    On appeal, we found defendant had presented a colorable claim of actual innocence and reversed and remanded the dismissal of his petition in its entirety without considering his ineffective assistance claim. 2022 IL App (1st) 191101-B, ¶ 68. Our supreme court affirmed our judgment as to defendant's actual innocence claim but reversed and remanded in part for consideration of whether defendant's ineffective assistance claim could satisfy the cause-and-prejudice test. 2024 IL 128587, ¶ 73. We now consider that question.

¶ 24                                II. ANALYSIS

¶ 25    Defendant argues that he established cause and prejudice for his ineffective assistance of counsel claim, which alleged counsel's failure to investigate whether Butler was the actual shooter before allowing defendant to enter a guilty plea. As such, defendant contends that this court should remand the entirety of his petition for second stage proceedings.

¶ 26                                A. The Act

¶ 27    The Act provides a method for a criminal defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates the filing of only one petition without leave of court. *People v. Lusby*, 2020 IL 124046, ¶ 27. There are two bases upon which the bar against successive petitions will be relaxed: (1) where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding or (2) where the petitioner asserts a fundamental miscarriage of justice based on his actual innocence. *People v. Robinson*, 2020 IL 123849, ¶ 42. Under either basis at this stage, we must accept as true all well-pled allegations that are not positively rebutted by the record, and we may not make fact or credibility determinations. *Id.* ¶ 45. Our review of the denial of leave to file a successive petition is *de novo*. *Id.* ¶¶ 39-40. As previously noted, the supreme court affirmed our reversal of the dismissal of defendant's actual innocence claim (2024 IL 128587, ¶ 73), so we turn our attention to cause and prejudice with regard to his ineffective assistance claim.

¶ 28                        B. Ineffective Assistance of Counsel

¶ 29    In defendant's successive petition, he alleged that plea counsel was ineffective for failing to investigate Butler as an alternate suspect, and he claimed that he informed counsel that, while he was in jail, he heard "around the jail" that Butler was the person who killed Williams. According

to defendant, counsel informed defendant that his confession was fatal to any defense, to which defendant responded that his confession was false and coerced, as he was detained for 30 hours by Detectives Folino and McDermott. He supported this claim with the same affidavits from Moore and Myles and a list of 11 lawsuits and corresponding complaints against Detectives Folino and McDermott.[3]

¶ 30    A defendant must make a *prima facie* showing of both cause and prejudice in order to be granted leave to file a successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2018); *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 33. To establish cause, defendant must identify "an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). To establish prejudice, defendant must demonstrate "that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* We reiterate that leave should be denied "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. This court reviews the denial of leave

---

[3]We note that defendant does not appear to be making a separate claim that his plea was involuntary because his confession was coerced; rather he suggests that his allegation that counsel should have investigated Butler should be "[t]aken in conjunction with his assertion that he falsely confessed to the charges." However, he makes no particularized argument, in his petition or in his brief, regarding the police misconduct lawsuits and his allegedly coerced confession. Thus, to the extent that defendant separately claims that counsel's erroneous or unreasonable advice, in light of his assertion that his confession was coerced, resulted in an involuntary guilty plea, we find that this claim is merely a conclusory allegation with no supporting argument and is therefore forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); see also *People v. Valdez*, 2016 IL 119860, ¶ 29 (holding that "[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice"); *People v. Williams*, 376 Ill. App. 3d 875 (2007), *judgment aff'd*, 235 Ill. 2d 178 (2009) (where the defendant's discussion of an issue in his brief was so lacking in analysis that it need not be considered).

to file based on the failure to establish cause and prejudice *de novo*. *Robinson*, 2020 IL 123849, ¶ 39.

¶ 31    As to cause, defendant asserts that he could not have brought this claim earlier "because he was unaware that Myles and Moore had information that Butler was the actual shooter until they divulged it in 2018, nearly nine years after the shooting." Additionally, he did not know that Detectives Folino and McDermott had multiple lawsuits against them until he filed a FOIA request in 2018. As to prejudice, defendant asserts that the affidavits support his allegation that counsel should have investigated Butler as instructed, the lawsuits against law enforcement demonstrate that his confession was coerced, and thus, counsel should not have advised him to plead guilty. He therefore contends that the allegations of the motion, petition, and supporting documentation, taken as true, "support that [his] plea counsel's performance was objectively unreasonable and highly prejudicial, as it resulted in an involuntary guilty plea."

¶ 32    For the reasons that follow, we conclude that defendant has satisfied the cause prong of the test but failed to establish the requisite prejudice. Therefore, his ineffective assistance of counsel claim in his successive petition fails.

¶ 33    We find that the affidavits of Moore and Myles establish cause in this case. Here, as we described earlier, the affidavits set forth that Moore witnessed the shooting and knew Butler to be the shooter. Further, based on a conversation with McWilliams, who witnessed the shooting, Myles learned that defendant was not the shooter and, at the time, the witnesses identified defendant because "he was the perfect person to blame the murder on." This information could not have been discovered earlier where Moore averred that he "never mentioned what [he] saw out of fear of [Butler] and his friends" and Myles did not have the conversation with McWilliams until 2015.

These both constitute objective impediments to defendant's ability to discover this supporting documentation and promptly raise them in an earlier proceeding.

¶ 34 However, the State asserts that this claim could have been raised in defendant's initial postconviction petition because defendant would have been well aware of counsel's alleged ineffectiveness at all times following the entry of defendant's guilty plea. Although it may be true that defendant could have made this same argument in his initial petition, the advent of Moore and Myles's attestations, taken as true, lend the necessary credence for his claim. Had defendant argued in his initial petition that counsel was ineffective for not investigating Butler without any supporting documentation, this court likely would have considered the allegation <u>baseless</u> and would have rejected the claim outright for lack of any support. It hardly comports with notions of due process and fairness for this court to reject this claim now that defendant has actually acquired support for the import of counsel's failure to investigate Butler.

¶ 35 We find support for our position in *People v. Johnson*, 2019 IL App (1st) 153204, which defendant cites in his reply brief. There, following a jury trial, the defendant was convicted of first degree murder and aggravated battery with a firearm in connection with a 1998 shooting. *Id.* ¶¶ 3-4. In 2011, the defendant filed a motion for leave to file a *pro se* successive postconviction petition, and subsequently, the circuit court docketed the petition and appointed counsel to represent the defendant. *Id.* ¶ 21. Later, counsel filed an amended petition, asserting claims of actual innocence and ineffective assistance of counsel based on trial counsel's failure to investigate a witness to the shooting. *Id.* ¶ 26. An affidavit from this witness, Williams, was attached to the amended petition, wherein he averred that he witnessed the shooting and the defendant was not the shooter and that he came forward several years after the shooting when he learned that the defendant had been found guilty. *Id.* The defendant also attached his own affidavit, averring that he asked trial counsel

to send an investigator to the crime scene to find witnesses but counsel did not do so. *Id.* Another affidavit was filed later from the defendant's trial counsel, stating that she could not recall sending an investigator to the scene of the shooting. *Id.* ¶ 28. The State filed a motion to dismiss the petition, which the court granted following a hearing. *Id.* ¶¶ 27-28.

¶ 36    On appeal, another panel of this court concluded that the trial court erred in dismissing the successive petition at the second stage under the Act. *Id.* ¶ 1. First, the court considered whether the ineffective assistance of counsel claim satisfied the cause-and-prejudice test because the circuit court below had not made specific findings as to cause and prejudice prior to docketing the petition and the State sought dismissal based on the defendant's failure to establish cause and prejudice. *Id.* ¶ 37. The court found that the defendant had established cause because Williams did not come forward until after the defendant's direct appeal and initial petition. *Id.* ¶ 39. The court also stated that, although Williams's presence at the scene was known, counsel's failure to investigate this witness as allegedly directed by the defendant and the defendant's lack of knowledge as to the eyewitness's testimony "relate[d] to his ineffective assistance of counsel claim, not his failure to raise his claim in an earlier proceeding." *Id.* ¶ 40. Similarly, in this case, defendant's failure to learn of the information known to Moore and Myles until after 2014 was an "objective factor" that hindered his ability to adequately set forth his claim of ineffective assistance of counsel in his initial petition. 725 ILCS 5/122-1(f) (West 2018). Thus, we conclude that defendant established cause for his ineffective assistance of counsel claim.

¶ 37    We next consider whether defendant adequately alleged prejudice under the Act, *i.e.*, whether APD Strunck's alleged ineffectiveness in failing to investigate Butler as the shooter so infected the proceedings that defendant's guilty plea and accompanying sentence violated due process. We must apply the requirements for claims of ineffective assistance of counsel to

determine whether prejudice would result from application of the bar against successive postconviction petitions. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 464-67 (2002). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687). To establish prejudice, "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694). A defendant's failure to satisfy either prong is fatal to a claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 91.

¶ 38 In the case before us, we find that defendant's claim of ineffective assistance of counsel as alleged in his successive petition fails to show counsel's performance was deficient, and thus, he cannot establish the requisite prejudice for this claim.

¶ 39 In deciding whether counsel's performance was deficient, the defendant must overcome a "strong presumption" that his lawyer's conduct constitutes sound trial strategy and falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A defendant is entitled to competent, not perfect, representation. *People v. Odle*, 151 Ill. 2d 168, 173 (1992). "Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients" (*People v. Morris*, 335 Ill. App. 3d 70, 79 (2002)), and the failure to do so

"may indicate ineffective assistance of counsel particularly where the witness was known to trial counsel and his testimony may have been exonerating" (*People v. Smith*, 341 Ill. App. 3d 530, 544 (2003)). However, "the reasonableness of a decision to investigate is assessed applying a heavy measure of deference to counsel's judgment." *People v. Orange*, 168 Ill. 2d 138, 149 (1995). An attorney who forgoes further investigation is not ineffective "[w]here the circumstances known to counsel at the time of his investigation do not reveal the sound basis for further inquiry in a particular area." *Orange*, 168 Ill. 2d at 150.

¶ 40 Based on the allegations in defendant's motion and the record, we conclude that counsel's failure to investigate Butler was not unreasonable. Looking at defendant's motion, his allegation against counsel simply states that defendant heard around the jail that Butler was the shooter and he instructed APD Strunck to investigate Butler. That is the entirety of his allegation regarding counsel's performance. It is unclear whether he directed counsel on where or how to find Butler (who, even if found, would be unlikely to admit to being the shooter) or how an investigation of Butler would lead to any exculpatory evidence. This bare allegation is insufficient to demonstrate counsel's deficient performance.

¶ 41 We further agree with the State that, even if APD Strunck had investigated Butler as defendant requested, it is entirely speculative that he would have uncovered some new eyewitnesses or other evidence to prove Butler was the shooter. In particular, it appears unlikely that counsel would have found Moore, who was not mentioned by any of the State's witnesses and who stated in his affidavit that he was afraid to come forward with his information earlier. APD Strunck could not have discovered Myles's information, where Myles was in prison at the time of murder and his conversation with McWilliams did not occur until 2015, nor would he have been likely to find McWilliams, who was not mentioned by any of the State's witnesses as being present

at the crime scene. Thus, defendant failed to adequately allege that counsel's failure to investigate Butler constituted deficient performance. See *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 77 ("Counsel cannot be deemed ineffective for failing to investigate witnesses that she did not know existed.").

¶ 42    We also disagree with defendant's assertion that this argument is a "*non sequitur*," stating that "[c]ounsel cannot know what he does not investigate." We might agree with defendant had he made any specific allegations in his petition as to how counsel would have uncovered any evidence that Butler was the shooter. According to the record, defendant did not even provide his counsel with names of the inmates who stated that Butler was the shooter. With so little to go on, it would seem harsh under these circumstances to deem APD Strunck's failure to investigate unreasonable. To illustrate our point, we contrast the situation before us with the circumstances in *Johnson*, 2019 IL App (1st) 153204, and *People v. Smith*, 2021 IL App (1st) 181635-U, wherein this court determined that the prejudice prong *had* been satisfied.

¶ 43    In *Johnson*, discussed previously, the court made clear that the eyewitness Williams could have easily been discovered by counsel where the defendant alleged that he specifically directed his trial counsel to send an investigator to the crime scene to find witnesses and defendant averred that Williams was known to frequent the corner where the shooting took place and could have been easily found. *Johnson*, 2019 IL App (1st) 153204, ¶¶ 40-41. Additionally, another eyewitness testified at trial that Williams was present during the shooting, but counsel did not call him as a witness or even learn what his testimony might be. *Id.*

¶ 44    In *Smith*, the defendant, who was convicted of murder in relation to a shooting, claimed ineffective assistance of trial counsel in his successive petition, which he supported with an affidavit from Turner, an eyewitness whose testimony would have supported the defendant's claim

of self-defense. 2021 IL App (1st) 181635-U, ¶¶ 2, 4, 40. In assessing whether the defendant's successive petition met the prejudice prong of the cause-and-prejudice test, this court concluded that the defendant had adequately alleged deficient performance of trial counsel. *Id.* ¶ 51. In so concluding, this court rejected the State's argument that Turner was an unnamed and unknown witness and counsel did not have an obligation to attempt to identify other persons at the scene of the shooting. *Id.* ¶ 48. Rather, the court concluded that the defendant's petition and the affidavit made "a *prima facie* allegation that Turner could have been located by counsel with reasonable investigation" where other known witnesses were familiar with Turner and knew he was in the apartment when the shooting took place. *Id.* ¶ 49.

¶ 45    In both *Johnson* and *Smith*, it was clear from each defendant's petition how counsel could have discovered the claimed exculpatory evidence prior to trial. The same is not true here. Here, defendant merely alleges that he instructed counsel to investigate Butler because he heard around the jail that Butler was involved in the shooting. However, defendant does not name any specific individuals whom counsel should have sought out, and it is unclear how counsel would have uncovered Myles's and Moore's attestations, considering defendant himself did not come by that information until all three happened to be in the same facility during their respective incarcerations. APD Strunck's ability to discover this evidence based on an instruction to investigate Butler is tenuous at best, and considering the number of eyewitnesses identifying defendant as the shooter, a vague instruction to investigate an individual named Butler hardly constitutes a sound basis for further inquiry. Thus, defendant's allegation that counsel's failure to investigate Butler constituted ineffective assistance is not well taken.

¶ 46    As a final note, we point out that defendant's allegation that counsel's performance was deficient for failure to investigate is belied by the record. On May 11, 2011, just a month prior to

the entry of his guilty plea, defendant informed the court that APD Strunck was ineffective, but he did not make any mention of a failure to investigate certain witnesses or alternative suspects. If counsel had, in fact, been instructed to investigate and had failed to do so, we imagine defendant would have mentioned that when the court had given him the opportunity to air his grievances with APD Strunck.

¶ 47    In sum, defendant's factual allegations do not adequately set forth an ineffective assistance of counsel claim. Because defendant cannot show that counsel's alleged ineffectiveness in failing to investigate Butler as the shooter so infected the proceedings that defendant's guilty plea violated due process, the prejudice prong of the cause-and-prejudice test cannot be satisfied. Accordingly, we conclude that defendant's claim of ineffective assistance of counsel is barred by the Act, but we remand defendant's successive postconviction petition solely as to his claim of actual innocence for further proceedings under the Act.

¶ 48                                        III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court on the ineffective assistance of counsel claim, and pursuant to the supreme court's affirmance of our prior reversal of the circuit court's dismissal of defendant's actual innocence claim, we remand for further proceedings under the Act.

¶ 50    Affirmed in part and reversed in part.

¶ 51    Cause remanded.

***People v. Griffin*, 2024 IL App (1st) 191101-C**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 10-CR-1910; the Hon. Micheal B. McHale, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Rachel M. Kindstrand, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Joseph Alexander, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |